Gregory D. Miller
Gene Y. Kang
**RIVKIN RADLER LLP**
25 Main Street, Suite 501
Court Plaza North
Hackensack, New Jersey 07601
Telephone: 201-287-2460
Facsimile: 201-489-0495

*Attorneys for Defendant, Factory Mutual Insurance Company*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROWAN UNIVERSITY, a New Jersey institution of higher education,<br><br>Plaintiff,<br><br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY, a Rhode Island corporation,<br><br>Defendant. | Civil Action No. _____<br><br><br>**NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT, DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1441.** |

TO:   United States District Court
      District of New Jersey

Pursuant to 28 U.S.C. §1441, *et seq.*, defendant, Factory Mutual Insurance Company ("Defendant"), hereby removes the above-captioned action from the Superior Court of New Jersey, Law Division, Gloucester County, to the United States District Court for the District of New Jersey. The basis for the removal is as follows:

**I.    Procedural Background**

1.   On or about March 5, 2021, plaintiff, Rowan University ("Plaintiff"), filed a complaint against Defendant in the District of New Jersey (Case No. 1:21-cv-4331-NLH-AMD) (the "Federal Court Action"). *See* Federal Court Action, D.E. 1.

2. Shortly thereafter, on March 9, 2021 the Court entered an Order to Show Cause directing Plaintiff to amend its Complaint within fifteen (15) days to properly allege Plaintiff's citizenship in New Jersey as a basis for diversity jurisdiction. *See* Federal Court Action, D. E. 4. The Court noted that "a State or its alter ego is not a 'citizen' for purposes of diversity jurisdiction." *Id*.

3. Instead of filing an amended Complaint, Plaintiff, on March 10, 2021, filed a slightly revised Complaint in the Superior Court of New Jersey, Law Division, Gloucester County, under Docket Number GLO-L-000250-21 (the "State Court Action"). Annexed hereto as Exhibit "A" is a copy of all process, pleadings and orders served upon Defendant in the State Court Action, as required by 28 U.S.C. § 1446(a).

4. That same day, Plaintiff filed a Notice of Voluntary Dismissal of Claim in the Federal Court Action. *See* Federal Court Action, D.E. 6.

5. On March 15, 2021, Defendant was served with the Summons and Complaint in the State Court Action by service upon the State of New Jersey Department of Banking and Insurance (the "DOBI").

6. Defendant received a copy of the Summons and Complaint in the State Court Action from the DOBI by certified mail on March 26, 2021.

7. This Notice is timely filed pursuant to 28 U.S.C. §1446(b) in that it is filed within thirty (30) days of Defendant's receipt of the Summons and Complaint.

II. **Nature of the Case**

8. The State Court Action is an insurance coverage dispute. Defendant issued a commercial insurance policy to Plaintiff, bearing policy number 1055865, for the period of July 1, 2019 through July 1, 2020 (the "Policy"). *See* Exhibit "A" (State Court Action Complaint) at ¶

7. Plaintiff alleges that the Policy provides certain coverage for business income losses and extra expenses, civil authority, interruption by communicable disease, decontamination costs, communicable disease response, protection and preservation of property, and claims preparation costs. *Id*. at ¶ 9. Plaintiff further alleges that it submitted a claim for its business income losses but that its claim was denied. *Id*. at ¶¶ 109-110.

9.      Plaintiff's Complaint asserts a single count against Defendant for breach of contract. *See id.* at ¶ 123. Specifically, Plaintiff alleges that it is entitled to coverage "for losses, expenses, damages and costs, including but not limited to costs and expenses incurred mending or repairing the premises, business income loss, extended business income loss, and/or extra expense coverages," due to alleged "direct physical loss of or damage to" Plaintiff's twenty-four insured locations, caused by the COVID-19 pandemic and ensuing emergency Orders. *See* Exhibit "A" at ¶¶ 2, 47, 123-127. In the alternative, Plaintiff alleges the following:

> [Plaintiff] suffered and continues to suffer physical loss of, or damage to its insured properties at the covered locations, which was caused by or resulted from:
>
> (i)   subject to circumstantial proof, actual on-site COVID-19 contamination—in referred locations of paragraphs 85-86—that caused a loss of, or damage to its property; or
> (ii)  its reasonable actions—regardless of emergency Orders—to preserve property and persons from an imminent risk of harm; or
> (iii) the risk of imminent harm, which is itself a covered cause of loss; or emergency Orders designating Rowan's business as uninhabitable and unusable on premises and in other forms; or
> (iv)  emergency Orders pursuant to inherent authorities to act, regardless of the actual presence of COVID-19 virus on-site; or
> (v)   the availability of other coverages under the Policy.

*Id*. at ¶ 128.

10. Plaintiff seeks judgment against Defendant for compensatory damages "in an amount to be determined at trial or appraisal ordered by this Court," costs, disbursements, allowances for expert fees, and attorneys' fees. *See id*. at WHEREFORE.

### III. The Requirements for Removal Are Satisfied

11. Pursuant to 28 U.S.C. § 1441(a), a state court action over which a District Court of the United States would possess original jurisdiction may be removed to the District Court for the district and division embracing the place where the state court action is pending.

12. A District Court shall have original jurisdiction over a proceeding between citizens of different states where the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

13. Here, both requirements of Section 1332(a)(1) are met with regard to the State Court Action because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000.

#### A. Diversity of Citizenship

14. Defendant is a citizen of Rhode Island as it is duly incorporated under the laws of Rhode Island and its principal place of business is located in Johnston, Rhode Island.

15. Plaintiff is a citizen of New Jersey. Plaintiff alleges in its Complaint that "it is a New Jersey public institution of higher education headquartered at 201 Mullica Hill Road, Glassboro, New Jersey 08028-1702." Exhibit "A" at ¶ 2.

16. While a state or its "alter ego" is not a citizen within the meaning of the diversity statute, *see Moor v. Alameda Cty.*, 411 U.S. 693 (1973), *Ramada Inns, Inc. v. Rosemount Memorial Park Assoc.*, 598 F.2d 1303, 1306 (3d Cir. 1979), Plaintiff, upon information and belief, is not an "alter ego" of the State of New Jersey and is therefore a citizen within the meaning of 28 U.S.C. § 1332(a)(1).

17. Questions concerning the citizenship of state agencies for purposes of diversity are unavoidably linked to questions of agency immunity under the Eleventh Amendment. *See Pennsylvania Hum. Rels. Comm'n v. USAir, Inc.*, 615 F. Supp. 75, 77 (W.D. Pa. 1985). Despite the differing policies underlying the two inquiries, they are almost identical. *Id*. (citing *Blake v. Kline*, 612 F.2d 718, 726 (3d Cir.1979)). Therefore, a determination of Plaintiff's citizenship is similar to an analysis of Eleventh Amendment sovereign immunity.

18. The Third Circuit has used a three-factor test for determining whether an entity is an arm or alter ego of the state: (1) the funding factor, which examines whether the state treasury is legally responsible for an adverse judgment entered against the alleged arm of the state; (2) the status under state law factor, which examines whether the entity is treated as an arm of the state under state case law and statutes; and (3) the autonomy factor, which examines whether, based largely on the structure of its internal governance, the entity retains significant autonomy from state control. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). Each step of the analysis is a fact-intensive undertaking. *See Bowman v. Rowan Univ.*, No. 18-cv-04239 NLH-KMW, 2018 WL 6617831, at *4 (D.N.J. Dec. 18, 2018).

19. Over twenty years ago, Rowan College (Plaintiff's predecessor) was held to be an arm of the state for purposes of Eleventh Amendment immunity. *See Nannay v. Rowan College*, 101 F. Supp. 2d 272, 284 (D.N.J. 2000). In *Nannay*, the Court applied the *Fitchik* factors to Rowan College (subsequently named Rowan University) and found that Rowan was entitled to Eleventh Amendment immunity based on, among other things, an affidavit from Rowan's Vice President of Administration and Finance regarding the school's funding and status under state law. *See id*. at 284.

20. More recently, however, in *Bowman v. Rowan Univ.*, Rowan moved to dismiss an employment discrimination action in the District of New Jersey arguing that it was entitled to Eleventh Amendment immunity because it is an arm of the state. *Bowman,* 2018 WL 6617831 at *4. The Court held as follows:

> With regard to Rowan, this issue has not been thoroughly addressed since the *Nannay* decision in 2000. The cases decided post-*Nannay* do not persuade this Court that dismissal is warranted at this stage.
>
> Moreover, Plaintiff has enumerated changes since the *Nannay* decision, including the New Jersey Medical and Health Science Education Restructuring Act which transferred the University of Medicine and Dentistry of New Jersey's School of Osteopathic Medicine to Rowan University. These changes may accord Rowan a status similar to Rutgers University which has been held to not enjoy Eleventh Amendment immunity.[1] At this stage of the pleadings, the information supplied by Defendants is not enough for this Court to conclude that Rowan is clearly an arm of the state. To be clear, Defendant is free to raise this argument again at a later date, following discovery.[2]

*Id.* (internal citations omitted).

21. Thus, as discussed in *Bowman v. Rowan Univ.*, based on changes in New Jersey law since the *Nannay* decision and research regarding the operations of Rowan, Rowan is no longer an arm of the state, and the issue is now ripe for revisiting.

22. In cases such as this, where the alleged state agency is a plaintiff rather than a defendant, this Court has explained that the first *Fitchik* factor (the funding factor) "must be accorded little weight." *See Pennsylvania Hum. Rels. Comm'n v. USAir, Inc.,* 615 F. Supp. at 76 ("The first factor is not helpful to the present analysis, being more suited to litigation in which an

---

[1] In *Kovats v. Rutgers, The State University*, 822 F.2d 1303 (3d Cir. 1987), the court held that Rutgers is not an arm of the state (and therefore not entitled to Eleventh Amendment immunity) because it was initially chartered as a private institution.
[2] According to the *Bowman v. Rowan Univ.* docket, the case settled before the issue of Rowan's Eleventh Amendment immunity was adjudicated.

6

agency is a defendant. Since the present suit is an enforcement action brought by the Commission, and USAir is not seeking money damages, the first factor must be accorded little weight."). Accordingly, here, because Plaintiff would not be subject to a judgment, the first *Fitchik* factor is not helpful to the present analysis and therefore must be accorded little weight.

23. Even if Plaintiff were subject to a judgment, however, "the Eleventh Amendment inquiry does not turn upon whether the state contributes a majority of an agency's funds, either directly or indirectly. . . . What matter[s] instead [i]s whether [the agency's] segregated general fund would be sufficient to pay the judgment and whether the state treasurer's control over [the agency's] funds [i]s discretionary or simply ministerial." *State of N.J., Dept. of Environ. Protection v. Gloucester Environmental Mgmt. Servs., Inc.,* 923 F. Supp. 651, 655-56 (D.N.J. 1995) (citing *Kovats v. Rutgers, The State University*, 822 F.2d 1303 (3d Cir.1987)) ("the Court observed that [in *Kovats*,] Rutgers retained considerable discretion in the use of its non-state funds. It also noted that Rutgers had 'substantial non-state funds' in both commingled and segregated accounts out of which a judgment could be paid.") (internal quotations omitted) (alterations in original).

24. Here, based on a review of Plaintiff's website and Board of Trustees ("Board") meeting minutes, it appears that while Plaintiff receives a portion of its budget from the state through appropriations, it, like Rutgers University, receives significant funding through fundraising and charitable contributions, including through the Rowan University Foundation. *See* Rowan University, Giving to Rowan, https://www.rowan.edu/about/giving.html (last visited March 29, 2021).

25. With respect to the second and third *Fitchik* factors, (*i.e.*, the status under state law factor and autonomy factor, respectively), New Jersey statutes (including the New Jersey Medical

7

and Health Science Education Restructuring Act ("Restructuring Act")) have given Plaintiff substantial independence, which has been recognized by New Jersey state courts. Further, Plaintiff's Board meeting minutes reveal that Plaintiff exercises that autonomy in the ordinary course of its business. As discussed in *Bowman v. Rowan Univ.*, since the *Nannay* decision, the New Jersey Legislature enacted the Restructuring Act, which granted Plaintiff a high degree of self-government. *See Bowman*, 2018 WL 6617831 at *5; N.J.S.A. § 18A:64M-5. Citing to the Restructuring Act, the Appellate Division, in *McFeeley v. Kar*, Docket Nos. A-4543-17T1, A-4955-17T1, 2019 WL 254591 (App. Div. Jan. 18, 2019), held with respect to whether a plaintiff provided proper notice under the New Jersey Tort Claims Act that "Rowan University . . . is *not* a state agency." *McFeely*, 2019 WL 254591 at *4 (emphasis added). In so holding, the Appellate Division stated:

> The Legislature declared that as a university, "[Rowan University] shall be given a high degree of self-government and that the governance and conduct of the university shall be free of partisanship." N.J.S.A. 18A:64M-5. Accordingly, the board of trustees of Rowan University was given specific powers, including the power to "[s]ue and be sued in its own name." N.J.S.A. 18A:64M-9(y). The university also has the right to retain independent legal counsel, including representation by the Attorney General. N.J.S.A. 18A:64M-9(z). . . . In short, Rowan University is a public entity and not a state agency. *See English v. Newark Hous. Auth.*, 138 N.J. Super. 425, 429-30 (App. Div. 1976) (describing a "public entity" as an entity that possesses sovereignty parceled to it from the State, and is to that degree independent of the State, as opposed to an administrative part, such as a state agency, which merely shares in the State's sovereignty); *see also* N.J.S.A. 59:1-3 (limiting the definition of State to preclude any "entity which is statutorily authorized to sue and be sued"). While Rowan University has elected to be represented by the Attorney General for tort and medical malpractice claims, that does not change its status as a public entity.

*Id.* at *4

26. Additionally, based on a review of Plaintiff's Board resolutions and meeting minutes, it appears that the Board has regularly utilized the Restructuring Act as a basis to, *inter alia*, enter contracts without competitive bidding or public advertising (including for substantial sums), enter into lease agreements, purchase and sell land, and settle litigations. *See* Rowan University, Agenda and Resolutions, https://sites.rowan.edu/president/board-of-trustees/resolutions.html (last visited March 29, 2021).

27. These are just a few examples of some of the significant changes Plaintiff has undergone since the time that *Nannay* was decided. It follows that, under a revisiting of the *Fitchik* factor analysis, Plaintiff, upon information and belief, is not an "alter ego", and thus, is a "citizen" of the State of New Jersey within the meaning of 28 U.S.C. § 1332(a)(1).

**B. Amount in Controversy**

28. "In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." *Samuel-Bassett v. Kia Motors America, Inc.*, 357 F.3d 392, 398 (3d Cir. 2004); *see also Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961); *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993). "[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Angus*, 989 F.2d at 146 (citation omitted). Additionally, the availability and allegations of entitlement to attorneys' fees may be considered in determining the amount in controversy. *See Granovsky v. Pfizer, Inc.*, 631 F. Supp. 2d 554, 563 (D.N.J. 2009) (explaining that "[a]ttorney's fees are also included for determining the amount in controversy requirement"); *Raspa v. Home Depot*, 533 F. Supp. 2d 514, 522 (D.N.J. 2007) (analyzing amount in controversy and stating that "[t]his Court must also consider attorneys' fees, which can be significant").

29. On or about July 24, 2020, Ms. Lorraine Sacchetti, Senior Director of Risk Management and Insurance for Rowan University, sent Defendant a summary of major expenditures and lost revenue as of July 17, 2020, in connection with its claim in the amount of $35,483,863.51. *See* Exhibit "A" [State Court Action Complaint], Ex. B at 2. Plaintiff subsequently referred to the summary of expenditures and lost revenue as its "partial proof of loss." *Id.*

30. Further, Plaintiff alleged in its Complaint it filed in the Federal Court Action that "the amount in controversy exceeds $75,000, exclusive of interests and costs." *See* Federal Court Action, D.E. 1.

31. Accordingly, although Defendant denies any liability to Plaintiff, based on a reasonable reading of the value of the rights being litigated in this lawsuit, it is apparent that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## IV. Conclusion

32. For the reasons set forth above, this Court has subject matter jurisdiction over the State Court Action under 28 U.S.C. § 1332(a)(1). Venue is proper before this Court pursuant to 28 U.S.C. § 1441(a) as a substantial part of the events giving rise to Plaintiff's claims occurred in New Jersey, and this is the federal judicial district and division embracing the Superior Court of New Jersey, Law Division, Gloucester County where the State Court Action is pending.

33. Upon the filing of this Notice of Removal, Defendant shall promptly give written notice of this removal to Plaintiff's attorney and shall file a copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Gloucester County, pursuant to 28 U.S.C. § 1446(d).

34. Defendant reserves the right to supplement this Notice with additional facts, legal authorities, and evidence in support of removal.

35. For the reasons set forth above, Defendant respectfully requests that the State Court Action pending in the Superior Court of New Jersey, Gloucester County, be removed therefrom in its entirety to this Court, as provided by law, and pursuant to 28 U.S.C. § 1446(d), that the Superior Court of New Jersey, Gloucester County proceed no further unless and until this case is remanded.

Date:  April 12, 2021

        Respectfully Submitted,

        *s/ Gregory D. Miller*
        Gregory D. Miller
        Gene Y. Kang
        **RIVKIN RADLER LLP**
        25 Main Street, Suite 501
        Court Plaza North
        Hackensack, New Jersey 07601
        Telephone: 201-287-2460
        Facsimile: 201-489-0495

        *Attorneys for Defendant, Factory Mutual Insurance Company*