<u>NOT FOR PUBLICATION</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| ROWAN UNIVERSITY, | : | |
| | : | |
| Plaintiff, | : | Civil No. 21-08992 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| FACTORY MUTUAL INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Rowan University's Motion to Remand (Doc. No. 12). The reasons set forth in the Opinion below, Plaintiff's Motion to Remand is **GRANTED**.

## I.      Background

This case involves a single breach of contract claim. Plaintiff Rowan University ("Plaintiff" or "Rowan" or "the University") filed a complaint against its insurance company, Defendant Factory Mutual Insurance ("Defendant" or "Factory Mutual"), asserting breach of contract following Factory Mutual's denial of a claim of coverage under Plaintiff's insurance policy. Defendant Removal Notice ¶ 8–10 ("Def. Removal Notice") (Doc. No. 1).

Plaintiff originally filed suit against Defendant in federal court in this district on March 5, 2021, invoking the court's federal diversity jurisdiction under 28 U.S.C. § 1332(a). Def. Removal Notice ¶ 11–13. On March 9, 2021, the District Court Judge issued an Order to Show Cause instructing Plaintiff to amend its complaint to specifically plead its citizenship. *Id.* at ¶ 2.

In this Order, the Court noted that alter egos of the state do not have state citizenship for diversity purposes. *Id.* The next day, Rowan voluntarily dismissed the federal action, *id.* at ¶ 4, and filed suit in the Superior Court of New Jersey, Gloucester County, Civil Division, *id.* at ¶ 3, Ex. A.

On April 12, 2021, Defendant removed the state action to federal court based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1441(a). *Id.* Defendant asserts removal is proper under § 1332(a) because Factory Mutual, a citizen of Rhode Island, is diverse from Plaintiff, a citizen of New Jersey, and the amount in controversy exceeds $75,000. Def. Removal Notice ¶¶ 12–27, 28–31. Defendant avers that Plaintiff is not an arm of the State of New Jersey under the applicable Third Circuit test and thus can be properly regarded as a citizen of New Jersey. *Id.* at ¶ 15–27. On May 7, 2021, Plaintiff filed a Motion to Remand and Memorandum in Support of the Motion to Remand, contending that federal diversity jurisdiction does not exist here because Rowan is an arm of the State of New Jersey and therefore has no citizenship for diversity purposes.  (Collectively "Pl. Remand Motion") (Doc. No. 12). The parties conducted jurisdictional discovery related to the question of Rowan's citizenship under the direction and supervision of U.S. Magistrate Judge Donio. *See* (Doc. Nos. 9, 10, 13, 16, 23). Defendant filed a Memorandum of Opposition in response to Plaintiff's Motion to Remand on July 12, 2021. ("Def. Opp. Mem.") (Doc. No. 26). Plaintiff then filed a Reply ("Pl. Reply") (Doc. No. 30), to which Defendant filed a Sur-reply, ("Def. Sur-reply") (Doc. No. 31).

## II.     **Legal Standard**

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action filed in state court to a federal court with original jurisdiction over the action. Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. 28 U.S.C. § 1447(c). A

case that is removed shall be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Id.* To defeat a motion to remand for lack of subject-matter jurisdiction, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). Generally, where the decision to remand is a close one, "the removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Abels*, 770 F.2d at 29 ("[L]ack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile[.]").

"'Diversity of citizenship subject matter jurisdiction falls within the original jurisdiction of the district court,' pursuant to § 1332(a) of Title 28 of the United States Code, and thus 'a state court case that implicates diversity jurisdiction' may generally be removed." *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (quoting *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996)). A district court may properly exercise subject matter jurisdiction only if the amount in controversy exceeds $75,000 and complete diversity of citizenship exists among the adverse parties. *See* 28 U.S.C. § 1332(a).

"There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973). "Diversity jurisdiction is also lacking where suit is brought against an agency or instrumentality that is the alter ego of the state." *Gibson-Homans Co. v. New Jersey Transit Corp.*, 560 F. Supp. 110, 111–12 (D.N.J. 1982) (citing *Harris v. Pennsylvania Turnpike Commission*, 410 F.2d 1332, 1333 n.1 (3d Cir.1969)); *see also Blake v. Kline*, 612 F.2d 718, 726 (3d Cir. 1979) ("The federal courts cannot entertain a suit in diversity jurisdiction against a state or its Alter ego.").

3

### III.   Discussion

### a.   Plaintiff Launches a Facial and Factual Challenge to Diversity Jurisdiction

The dispute in this case concerns whether diversity of citizenship exists between Rowan and Factory Mutual. Plaintiff contends that diversity is decided on the face of the complaint. Pl. Remand Motion 2–3. Defendant responds that a court contemplating a factual challenge to diversity jurisdiction is permitted to look beyond the face of the complaint. Def. Opp. Mem. 4–5.

"Because a motion to remand shares an essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), it is properly evaluated using the same analytical approach." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016). A court evaluating a challenge to diversity jurisdiction in Rule 12(b)(1) motion or a motion to remand "must determine whether the challenge is a facial attack or a factual attack." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018). The Third Circuit has instructed,

> A facial attack ... is an argument that considers a claim on its face and asserts that it is insufficient to invoke subject matter jurisdiction of the court because, for example, ... there is no indication of a diversity of citizenship among the parties[.] A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction.

*Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014)) (alterations in original) (quotations and internal citations omitted). Put another way, a facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the notice of removal, and it requires the court to consider the allegations as true" whereas a factual attack challenges "the factual allegations underlying the assertion of jurisdiction, and involves the presentation of competing facts." *Papp*, 842 F.3d at 811 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)) (cleaned up). Here, Plaintiff puts forth both a facial and factual attack on jurisdiction.

### b.  Plaintiff's Facial Challenge to Diversity Jurisdiction

The Court construes Plaintiff's assertion that "nothing on the face of Rowan's Complaint support[s] Defendant's assertion of diversity jurisdiction" as a facial attack on jurisdiction. Pl. Remand Motion 3. It is true that Rowan does not specifically plead its own citizenship in its state court Complaint.[1] Def. Removal Notice, Ex. A. But a court deciding a motion to remand must evaluate the facial sufficiency of jurisdictional allegations based on the removal petition. *See Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 282 n.1 (3d Cir. 1980) (finding that diversity jurisdiction existed where diversity was sufficiently alleged in the removal petition, but not the face of the state court complaint); *Doe I v. UPMC*, No. 2:20-CV-359, 2020 WL 4381675, at *2 (W.D. Pa. July 31, 2020), *motion to certify appeal denied,* No. 2:20-CV-359, 2020 WL 5742685 (W.D. Pa. Sept. 25, 2020) ("In a facial challenge, the court looks to the face of the notice of removal[.]"). Otherwise, "a plaintiff could always prevent removal based on diversity simply by careful pleading." *Samson v. Allis-Chalmers Prod. Liab. Tr.*, No. 90-0139, 1990 WL 87394, at *1 (E.D. Pa. June 21, 1990) (unpublished). In its removal petition, Defendant asserts Rowan is a citizen of New Jersey, not an arm of the state, and supports this contention with detailed factual allegations. Def. Removal Notice ¶ 15–27. As Plaintiff does not attack the facial sufficiency of the allegations in Defendant's removal petition, the Court finds Plaintiff's facial challenge unavailing.

### c.  Plaintiff's Factual Challenge to Diversity Jurisdiction

The bulk of Plaintiff's motion is best understood as a factual attack on subject matter jurisdiction, as Plaintiff disputes Defendant's allegation that Rowan is a citizen of New Jersey and sets forth additional facts to indicate that diversity of citizenship does not exist in this matter.

---

[1] In its state Complaint, Plaintiff avers only that "Plaintiff is a New Jersey public institution of higher education headquartered and operating in New Jersey[.]" Def. Removal Notice, Ex. A.

*See generally* Pl. Remand Motion; Pl. Reply. "To resolve a factual challenge, the '[c]ourt may look beyond the pleadings to ascertain the facts[.]'" *GBForefront*, 888 F.3d at 35 (quoting *Aichele*, 757 F.3d at 358) (alterations in original). Facing a factual challenge, the party asserting jurisdiction has "the burden of proof to establish diversity jurisdiction by a preponderance of the evidence[,]" *id.*, and "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case[,]'" *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

The Court notes, however, that the crux the issue at hand is not a dispute over the jurisdictional facts themselves but the legal significance of those facts. *Cf. GBForefront*, 888 F.3d at 35 n.8 (noting that a party's "factual attack ultimately came down to a question of law on how to determine the citizenship of certain trusts"). Whether Rowan is an arm of the state is a legal question. If Plaintiff is an alter ego of the state under the Third Circuit's legal test, Plaintiff has no citizenship for diversity purposes and this matter must be remanded to state court due to lack of federal subject matter jurisdiction.[2] 28 U.S.C. § 1447(c). But if Plaintiff is not the State's alter ego, Defendant has met its burden of establishing federal diversity jurisdiction over this matter. Defendant has alleged complete diversity between itself, a citizen of Rhode Island, and Plaintiff, a purported citizen of New Jersey, and the parties do not dispute that the amount in controversy exceeds $75,000. Def. Removal Notice ¶¶ 16–27, 28–31.

The question of Rowan's legal status as an arm of the state has come before federal courts in this district several times before, with inconsistent results. *E.g.*, *Bowman v. Rowan Univ.*, No. 1804239, 2018 WL 6617831, at *4–5 (D.N.J. Dec. 18, 2018) (suggesting without

---

[2] As the parties acknowledge, there is no basis for federal question jurisdiction pursuant to 28 U.S.C.§ 1331. This suit involves a breach of contract claim, which does not implicate a question of federal law. Pl. Remand Motion 1; Def. Removal Notice ¶ 8–9.

6

deciding that structural changes to Rowan University following *Nannay v. Rowan Coll.*, 101 F. Supp. 2d 272, 283 (D.N.J. 2000), call into question whether Rowan could still be considered arm of the state); *Nannay*, 101 F. Supp. 2d at 283 (finding that "Rowan University is the alter ego of the State for Eleventh Amendment purposes"); *State of N.J., Dep't of Env't Prot. v. Gloucester Env't Mgmt. Servs., Inc.*, 923 F. Supp. 651, 657–60 (D.N.J. 1995) (holding that Glassboro State College—later renamed Rowan College and then Rowan University—was not an alter ego of the State for immunity purposes); *Rehberg v. Glassboro State Coll.*, 745 F. Supp. 1113, 1117 (E.D. Pa. 1990) (concluding Glassboro State College, a predecessor of Rowan University, was entitled to Eleventh Amendment immunity). In the most recent of these cases, *Nannay*, the district court found that Rowan constituted an alter ego of the state under the Eleventh Amendment. 101 F. Supp. 2d at 283. Nonetheless, subsequent changes to Rowan's governance following the implementation of the New Jersey Medical and Health Science Education Restructuring Act ("the Restructuring Act" or "the Act"), N.J.S.A. § 18A:64M-1 *et seq.*, require the Court revisit the issue yet again.

To establish whether an entity is a state's alter ego for diversity purposes, the Third Circuit employs the same test used to evaluate an entity's entitlement to Eleventh Amendment immunity. *Doolin v. Kasin*, 424 F. App'x 106, 109 (3d Cir. 2011) ("[A] court must perform the same analysis as is required to determine Eleventh Amendment immunity" to determine if an entity is an alter ego of the state for diversity purposes (citing *Blake*, 612 F.2d at 726)); *Gibson-Homans Co.*, 560 F. Supp. at 112 ("In determining whether or not [an entity] is the alter ego of the State for diversity purposes, the Court must perform the same analysis required in order to determine whether New Jersey Transit is immune from suit under the Eleventh Amendment.").

In *Fitchik v. New Jersey Transit Rail Operations*, the Third Circuit laid out a consolidated three-part test to evaluate whether an entity is an arm of the state entitled to Eleventh Amendment immunity. 873 F.2d 655, 659 (3d Cir. 1989). Under *Fitchik*, a court must consider: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007), amended on reh'g (Mar. 8, 2007)); *see Fitchik*, 873 F.2d at 659.[3] The court must then balance these factors, affording them equal weight. *See Karns*, 879 F.3d at 513–15 (emphasizing that "none of the three Fitchik factors is 'predominant'" (quoting *Cooper v. Se. Pa. Transp. Auth.*, 548 F.3d 296, 301 (3d Cir. 2008))). Importantly, "each case must be considered on its own terms, with courts determining and then weighing the qualitative strength of each individual factor in the unique factual circumstances at issue." *Karns*, 879 F.3d at 514. The Court will address each subfactor in turn.

### i.  The Funding Factor

The funding factor asks whether state money would be used to cover a legal judgment against the entity in question. *Patterson v. Pennsylvania Liquor Control Bd.*, 915 F.3d 945, 950 (3d Cir. 2019) (citing *Fitchik*, 873 F.2d at 659). The Third Circuit has articulated three subfactors relevant to the assessment of the first *Fitchik* factor: "(1) a state's legal obligation to pay a money judgment entered against the entity; (2) whether the agency has money to satisfy the judgment; and (3) whether there are specific statutory provisions that immunize the state from liability for money judgments." *Id.* at 951 (citing *Fitchik*, 873 F.2d at 659).

---

[3] The Court will refer to these factors as (1) the funding factor; (2) the status under state law factor; and (3) the autonomy factor.

The parties concur, however, that the first *Fitchik* factor is less directly relevant in the instant matter where the alleged "arm of the state," Rowan, is the plaintiff rather than the defendant.[4] Def. Opp. Mem. 8; Pl. Reply 6. The Court agrees, but still finds the funding factor to be indicative of Rowan's relationship with the State and, consequently, its alter ego status. *See New Jersey Dep't of Env't Prot. v. Nestle USA, Inc.*, No. 06-4025, 2007 WL 703539, at *2 n.1 (D.N.J. Mar. 2, 2007) ("[T]he first factor is not helpful in this analysis because it is more suited to litigation in which an agency is a defendant in an action.").

### 1. State's Legal Obligation to Pay a Money Judgment

A court evaluating the funding factor must examine the state's legal *obligation* to indemnify an entity in case of an adverse legal judgment against that entity. *See Patterson*, 915 F.3d at 951. The Third Circuit has "consistently rejected the argument that a State's voluntary choice to pay a state-affiliated entity's liabilities…favors Eleventh Amendment immunity." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 87 (3d Cir. 2016).

The Third Circuit's analysis in *Maliandi* is instructive. In that case, the Court was evaluating whether Montclair State University ("Montclair" or "MSU"), then governed as a state college by N.J.S.A § 18A:64-1 *et seq.*, was entitled to immunity as an arm of the state.[5] *See generally*, *id.* The Court stressed that a state's overarching legal liability for an entity's debts is the "key factor" in a court's funding evaluation.[6] *Id.* at 87 (quoting *Febres*, 445 F.3d at 236).

---

[4] Defendant suggests that "[i]n cases involving state agency plaintiffs, courts have looked instead to whether any recovery by the entity inures to the state's benefit." Def. Opp. Mem. 8 (citing *Commonwealth of Pa. Pub. Sch. Employees' Ret. Sys. v. Citigroup, Inc.*, No. 11-2583, 2011 WL 1937737, at *2 (E.D. Pa. May 20, 2011) (unpublished)). Assuming, *arguendo*, that this is the proper analysis, the Court finds no evidence to suggest that Plaintiff's recovery in this case would inure to the state of New Jersey.
[5] As Defendant points out, Montclair underwent a statutory change after *Maliandi* was decided. *See* N.J.S.A. § 18A:64N-1, *et seq.* ("Montclair State University Act"). Throughout this opinion, the Court will refer to Montclair and its governing statutes as they existed at the time *Maliandi* was decided.
[6] While the Third Circuit found the funding factor weighed against immunity, the Court ultimately concluded that, on balance, the *Fitchik* factors counselled in favor of a finding that Montclair was entitled to immunity.

9

As with Montclair, New Jersey has no "all-encompassing legal obligation to pay judgements against Rowan." Pl. Remand Motion 4; Def. Opp. Mem. 9; *see* N.J.S.A § 18A:64M-28. The State may be responsible for some of Rowan's liability under the New Jersey Tort Claims Act ("Tort Claims Act") and Contractual Liability Act, but this does not sway the Court's analysis here for the reasons articulated by the Third Circuit in *Maliandi*. In *Maliandi*, the Third Circuit concluded:

> Even assuming that New Jersey would have the legal obligation to pay judgments against MSU under the Tort Claims Act and the Contractual Liability Act … the exceptions embodied in those statutes only prove the rule, confirming the absence of an overarching legal obligation on the part of the State.

*Maliandi* 845 F.3d at 88. Indeed, only if Plaintiff elects to be represented by the Attorney General will the State indemnify Rowan under the Tort Claims Act. *See* N.J.S.A §§ 18A:64M-9(z), (aa)(2), -33. The State's lack of overarching legal obligation to cover adverse judgments against Rowan suggests Plaintiff is not an arm of the state. *See Maliandi* 845 F.3d at 88 ("Absent such obligation, this subfactor counsels against treating MSU as an arm of the State.").

### 2.  Alternative Sources of Money

Subfactor two of the funding analysis asks whether Rowan has sufficient non-state funds to cover an adverse judgment against it. *Maliandi*, 845 F.3d at 88. Consideration of alternative sources of funding "necessarily involves a review of the percentage of funds [the University] receives from the State" as well as "the extent to which the State retains ownership over the funds it appropriates and whether the entity is insured against money judgments." *Id.* While "there is no hard-and-fast rule about how much funding from the State is enough to trigger immunity," the Third Circuit has "regularly determined that alternative sources of funding—even where only a small part of the entity's overall budget—counsel against immunity." *Id.*

Rowan admits to having alternative sources of funds including "tuition, fees, and room and board," Pl. Remand Motion 5, and has the power to set fees and tuition rates as it sees fit, N.J.S.A. § 18A:64M-9(n), (o). "Net Student Revenues" constituted over 40% of Rowan's total revenue in 2018, 2019, and 2020. Miller Declaration Ex. A ("Miller Decl. Ex. A") 3. Moreover, state appropriations account for a relatively small portion of Rowan's operating budget—11.5% in 2020 and roughly 16% in 2021, Def. Opp. Mem. 12; Miller Decl. Ex. A 4—particularly when compared to other cases in which the Third Circuit has found sufficient alternative funds exist. *See, e.g.*, *Maliandi*, 845 F.3d at 88 ("[W]e have concluded that an entity has the capacity to pay money judgments out of its own funds even where the State appropriates 85-90% of the entity's operating budget." (citing *Febres*, 445 F.3d at 232–34)); *Kovats v. Rutgers, The State Univ.*, 822 F.2d 1303, 1308–09 (3d Cir. 1987) (concluding "a judgment against Rutgers can be paid from non-state funds" even though "between 50 and 70 percent of the general operating account is made up of state appropriations.").

Further, there is no indication of continued state ownership of appropriations once allocated to Rowan. If, once deposited, state-appropriated funds "belong" to an entity, judgments paid out using those funds are considered to be satisfied with the entity's—not the state's— money. *Febres*, 445 F.3d at 234. Although Rowan must comply with certain budgetary reporting requirements and is subject to state audit, N.J.S.A. § 18A:64M-9(f), these requirements do not show proof of state control. *See Maliandi*, 845 F.3d at 89–90 (concluding that because Montclair "may spend state-appropriated funds as it sees fit[,]" the requirement that the school "spend its funds within the general parameters of the State's overall budget appropriations" was a "minimal constraint" and did not indicate continued state ownership over funds allocated to MSU (citation

and internal quotation omitted)).[7] The University alone is empowered to "disburse all moneys" and "direct and control expenditures[.]" N.J.S.A. § 18A:64M-9(e), (f). In sum, Rowan has considerable alternative sources of funding from which to draw to cover an adverse judgment.

### 3.  State Immunity from Liability

"The third subfactor stands for the simple proposition that where the State has expressly immunized itself from the entity's liabilities, it thereby indicates the entity is not an arm of the State …." *Maliandi*, 845 F.3d at 90. The provision of the Restructuring Act governing State immunity with respect to Rowan, N.J.S.A. § 18A:64M-28 ("No provision of this act shall be deemed or construed to create or constitute a debt, liability, or a loan or pledge of the credit, of the State of New Jersey"), is now identical to the provision governing state liability with respect to Rutgers, N.J.S.A. § 18A:65-8, which the Third Circuit considered to be demonstrative of broad state immunity against liability in *Kovats*, 822 F.2d at 1310–11 (evaluating whether Rutgers was an arm of the state entitled to Eleventh Amendment immunity); *see Maliandi*, 845 F.3d at 90 (characterizing N.J.S.A. § 18A:65-8 as affording the state "sweeping statutory immunity" against liability for judgments against Rutgers).[8] We agree.

Upon consideration of the relevant subfactors, the Court concludes that the funding factor unambiguously points towards the conclusion that Rowan is not an arm of the state.

### ii.  The Status Under State Law Factor

---

[7] The Restructuring Act also requires that Rowan "shall carry *its own* liability insurance or maintain an actuarially sound program of self insurance[,]" providing yet another alternative source of funding from which the University could draw in case of an adverse judgment against it. N.J.S.A. § 18A:64M-9(aa)(1) (emphasis added).

[8] Rowan has indicated that the State has not immunized itself from liability arising from medical malpractice or personal injury claims, Kanner Declaration ("Kanner Decl.") Ex. A 7, under the Tort Claims Act, Miller Decl. Ex. F 1–2. As the Court understands, the State is only liable in Tort Claims Act cases in which Rowan elects to be represented by the state Attorney General. N.J.S.A. § 18A:64M-9(aa)(2). Thus, state liability for such claims is the exception, not the rule.

The second *Fitchik* factor calls for an examination of "whether the entity is treated as an arm of the State under state case law and statutes." *Maliandi*, 845 F.3d at 83. Pertinent subfactors include: "(1) how the law treats the agency generally; (2) whether the agency is separately incorporated; (3) whether the agency can sue and be sued in its own right; (4) and whether it is immune from state taxation." *Patterson*, 915 F.3d at 953 (citing *Fitchik*, 873 F.2d at 659).

### 1.   Rowan's General Treatment Under State Law

When analyzing how state law treats an entity generally, courts take stock of: "(1) explicit statutory indications about how an entity should be regarded; (2) case law from the state courts—especially the state supreme court—regarding an entity's immunity or status as an arm of the State; and (3) whether the entity is subject to laws for which the State itself has waived its own immunity (such as state tort claims acts)." *Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 655 (3d Cir. 2018) (quoting *Maliandi*, 845 F.3d at 91). Overall, there is limited evidence as to Rowan's general treatment under state law, and the available evidence points in opposite directions.

As to the first consideration, Rowan contends that "the Legislature, by statute, … has deemed Rowan to be a State instrumentality performing essential governmental functions." Pl. Remand Motion 8 (citing N.J.S.A. §§ 18A:64M-4, -29). The Third Circuit has recognized "that providing education has long been recognized as a function of state government[,]" tilting the scale slightly in favor of finding that Rowan is an arm of the state. *Kovats*, 822 F.2d at 1310 (quoting *Skehan v. State System of Higher Education*, 815 F.2d 244, 248 (3d Cir.1987).

New Jersey caselaw related to Rowan is largely unhelpful in the instant matter. [9] No state cases decided after the implementation of the Restructuring Act specifically address whether

---

[9] Plaintiff cites several unpublished state cases purportedly indicative of Rowan's status under state law. Pl. Remand Motion 5–6. The most relevant of these cases is *Eze v. Rowan University*, in which the New Jersey Appellate

Rowan University is an arm of the state. Defendant highlights a few recent cases indicating that state courts generally refer to Rowan as a public entity, as opposed to a state agency, for the purposes of the Tort Claims Act. Def. Opp. Mem. 16–17 (citing *McFeely v. Kar*, No. A-4543-17T1, 2019 WL 254591, at *4–5 (N.J. Super. Ct. App. Div. Jan. 18, 2019), *cert. denied,* 238 N.J. 58, 207 A.3d 762 (2019); *Garriga v. Rowan Univ*. No. A-1353-17T1, 2018 WL 5532491, at *1 (App. Div. Oct. 30, 2018); *McNellis-Wallace v. Hoffman*, 464 N.J. Super. 409, 417–18 (App. Div. 2020)). The parties debate at length the significance of one such case, *McFeely*, where the Court was considering whether notice of a claim against Rowan served on the state Attorney General had been properly effectuated under the Tort Claims Act though Rowan was not explicitly named in the notice. 2019 WL 254591, at *4–5. The *McFeely* court concluded that, although Rowan was being represented by the Attorney General in the matter, because the University was a "public entity"—not a state agency—under the Tort Claims Act "the failure to name Rowan University in the notice made the notice ineffective[.]" *Id.* at *4. In reaching this conclusion, the *McFeely* court considered Rowan's power to sue, right to retain independent counsel, and "high degree of self-governance"—factors also germane to a *Fitchik* inquiry. *Id.* (quoting N.J.S.A. §§ 18A:64M-5, -9(y), (z)). The *McFeely* court, at least, viewed Rowan not as

---

Division considered Rowan to be a "public entity" within the meaning of the Tort Claims Act and the "State" within the meaning of the Contractual Liability Act. A-2659-07T2, 2009 WL 232181, at *2 (App. Div. Feb. 3, 2009). The Restructuring Act specifically provides that Rowan is subject to the Contractual Liability Act, N.J.S.A. § 18A:64M-23, though the Court notes that the University technically no longer falls within the Contractual Liability Act's definition of the "State" as it is now an entity that can sue and be sued, N.J.S.A. § 59:13-2. The Court does not find *Eze* particularly illuminating as to whether state courts would view Rowan, as it exists now, as an arm of the state. If anything, § 18A:64M-23 is a recognition that Rowan no longer satisfies the Contractual Liability Act's definition of the "State."

Nor does the Court find the two additional cases cited by Plaintiff to be persuasive as to this matter. *Rose v. Rowan University* involved a contract dispute, in which there was a passing reference to the state forms required for the termination of a Rowan employee. No. A-3337-17-T2, 2019 WL 1870883 (App. Div. Apr. 26, 2019). *In re State, Rowan University* involved the state court's review of the University's decision to terminate a medical resident in which Rowan was represented by the state Attorney General and referred to as the State of New Jersey in the caption of the case. No. A-1286-15T3, 2016 WL 3981082 (App. Div. July 26, 2016).

an entity that "shares in the State's sovereignty" but one that "possess sovereignty parceled to it from the state" and enjoys a certain degree of independence from the state. *Id.* (citing *English v. Newark Hous. Auth.*, 138 N.J. Super. 425, 429–30 (App. Div. 1976)). While not directly on point, *McFeely* is relevant and pushes slightly in favor of the conclusion that Rowan is not an arm of the state.

The additional considerations under this subfactor are inconclusive.[10] For example, Rowan is subject to New Jersey's Tort Claims Act, which implies that Rowan would otherwise be immune from tort claims. However, the Third Circuit has previously noted that the Tort Claims Act also applies to entities that are not considered arms of the state, like municipalities, diminishing the salience of this attribute in the context of an immunity inquiry. *Maliandi*, 845 F.3d at 95. The same logic applies to the Court's arm of the state inquiry here.

In addition, Rowan's new designation as a public research university has little bearing on this subfactor. Defendant contends that the Restructuring Act shifted Rowan's status from a state college to a public research university, "a designation Plaintiff now shares with Rutgers University[,]" and thus supports a finding that Rowan, like Rutgers, is not an arm of the state. Def. Opp. Mem. 15 (citing N.J.S.A. 18A:64M-2(c), (v)). But Defendant does not show that this new designation, itself, has any independent legal or statutory significance. Further, the *Kovats* court did not mention Rutgers' designation as a public research university when determining the school's alter ego status. *Kovats*, 822 F.2d at 1310. Therefore the Court does not find Rowan's new designation to be probative of the University's status under state law.

---

[10] Defendant cites language in the Restructuring Act that purportedly indicates the Legislature's intent for Rowan to exercise substantial institutional autonomy. N.J.S.A. §§ 18A:64M-5, -30. While true and examined in more detail in the autonomy section below, the Court notes that one of these provisions also allocates Rowan to the New Jersey Department of State, and is thus a "double-edged sword" that weighs both in favor of and against the claim that Rowan is an arm of the state. *Maliandi*, 845 F.3d at 93 (holding that the virtually identical language of N.J.S.A. § 18A:3B–27 cuts both for and against a finding that MSU was entitled to immunity and was therefore of little use in the court's assessment of the state law factor).

## 2.   Incorporation, Ability to Sue and Be Sued, & Immunity from State Taxation

First, "[s]eparate incorporation disassociates an entity from its State and thus weakens its claim to Eleventh Amendment immunity." *Maliandi*, 845 F.3d at 93. As Rowan, like Montclair, has the power to adopt and use a corporate seal but has opted not to do so, N.J.S.A. § 18A:64M-9(a), we find that this has "little bearing" on the question of Rowan's citizenship. *Maliandi*, 845 F.3d at 93 (concluding that this subfactor had "little bearing" on MSU's arm of the state status since Montclair had the authority to incorporate but had chosen not to do so).

Second, "[a]n entity is more likely to be an arm of the State … if it lacks the ability to sue and be sued in its own name." *Maliandi*, 845 F.3d at 94. The Restructuring Act has changed the balance of this subfactor, which worked in Rowan's favor in *Nannay*. 101 F. Supp. 2d at 284. Unlike in *Nannay*, Rowan now can sue and be sued in its own name. N.J.S.A. § 18A:64M-9(y). This differentiates Rowan from Montclair in *Maliandi* and New Jersey state colleges generally, which cannot sue or be sued in their own right. *Maliandi*, 845 F.3d at 94.

Third, the fact that Rowan is immune from state taxation, <u>Nannay</u>, 101 F. Supp. 2d at 284; (Pl. Remand Motion 9 (citing N.J.S.A § 54:32B-1, *et seq.*)), weighs in favor of a finding that it is an arm of the state, *see Karns*, 879 F.3d at 517; *Maliandi*, 845 F.3d at 95 (noting the fact that MSU was immune from state taxes weighed in favor of immunity).

## 3.   Other Relevant Considerations

When evaluating an entity's status under the second *Fitchik* factor, the Third Circuit also looks at "the entity's authority to exercise the power of eminent domain, application of state administrative procedure and civil service laws to the entity, the entity's ability to enter contracts

and make purchases on its own behalf, and whether the entity owns its own real estate." *Karns*, 879 F.3d at 516 (quoting *Maliandi*, 845 F.3d at 91).

First, Rowan's ability to exercise eminent domain per N.J.S.A. § 18A:64M-9(l)—typically a sovereign power—weighs in favor of a conclusion that Rowan should be afforded alter ego status. *See Maliandi*, 845 F.3d at 95. Defendant is correct, however, that this factor must be taken "with a grain of salt" because some entities not considered arms of the state may also exercise eminent domain. *Id.* (citing *Fitchik*, 873 F.2d at 663).

Second, the Court considers whether New Jersey's administrative procedure and civil service laws apply to Rowan as "[a]n entity's claim to immunity is stronger if it is subject to a State's administrative procedure and civil service laws." *Maliandi*, 845 F.3d at 95. Rowan is subject to New Jersey's Administrative Procedure Act ("Administrative Procedure Act"), Pl. Remand Motion 9 (citing N.J.S.A. § 18A:3B-6(f)); *Nannay*, 101 F. Supp. 2d at 284, civil service laws, Miller Decl. Ex. A 8, and its employees are eligible for state healthcare and pension plans, N.J.S.A. § 18A:64M-16. These attributes tip the scale in favor of remand. *Cf. Kovats*, 822 F.2d at 1310 (finding that Rutgers' exemption from state civil service laws and administrative procedure requirements indicated the school was "not treated as synonymous with the state"). Defendant counters that because only a portion of Rowan's employees are subject to civil service laws—20% by Defendant's calculation—it is of "minimal consequence" to the Court's analysis. Def. Opp. Mem. 22. Even assuming the accuracy of this estimate, the Court finds that 20% constitutes a considerable subset of Rowan's employees and is thus pertinent to the Court's inquiry. *See Maliandi*, 845 F.3d at 95 (noting the fact that a "significant subset" of state college employees are subject to New Jersey's civil service laws counsels in favor of immunity).

Third, the Court considers Rowan's ability to enter into contracts, as entities free to contract without state approval or oversight are less likely to be considered arms of the state. *Maliandi*, 845 F.3d at 95; *Bowers*, 475 F.3d at 548 (concluding the second *Fitchik* factor weighed in favor of immunity in part because "the University is unable to buy or transfer real estate without the express permission of a State Executive Council"). Rowan may enter into contracts of its own accord, N.J.S.A. § 18A:64M-9(k), (q), (v), (aa), but is subject to a state-imposed competitive bidding requirement in certain instances, N.J.S.A. § 18A:64M-9(v) (imposing a competitive bidding requirement on all contracts entered into by Rowan for "the purchase of services, materials, equipment and supplies, for the performance of any work, or for the hiring of equipment or vehicles" valued above a specific threshold set by the Governor). These facts that simultaneously cut for and against its arm of the state status.[11]

Fourth, Rowan can make purchases without state approval or input and own its own real estate. N.J.S.A. § 18A:64M-9(q). These attributes suggest Rowan is not the State's alter ego.

The Third Circuit has acknowledged that "the multifaceted nature of the status under state law factor can make it so hopelessly checkered that it does not significantly help in determining" whether an entity is an arm of the state. *Maliandi*, 845 F.3d at 91 (quoting *Fitchik*, 873 F.2d at 662) (cleaned up). Rowan's general treatment under state law, ability to contract, and incorporation status provide little clarification as to whether Rowan is entitled to alter ego status. As to the remaining considerations, while Rowan may exercise eminent domain, is immune from state taxes, and subject to the Administrative Procedure Act and civil service laws, the University can also sue

---

[11] Defendant attempts to compel a different conclusion here by noting the numerous types of contracts exempt from a competitive bidding requirement, allegedly indicating a lack of practical constraints on Rowan's contractual freedom. Def. Opp. Mem. 20–21. The Court is not persuaded by this argument. Rowan is undisputedly subject to a state-imposed constraint on its ability to contract, N.J.S.A. § 18A:64M-9(v), which is not the case for all public universities in New Jersey, *e.g.*, *Kovats*, 822 F.2d at 1310 (noting Rutgers is not bound by competitive bidding statutes). The Court also notes that these exceptions to the requirement are not unique to Rowan but apply to state colleges as well, N.J.S.A. § 18A:64-56, which have been held to be arms of the state, *e.g.*, *Maliandi*, 845 F.3d at 96.

and be sued, makes purchases on its own behalf, and own its own real estate. Where, as here, examination of an entity's status under state law is inconclusive, the second *Fitchik* factor "effectively drops out of [the Court's] overall Fitchik analysis." *Id.*

### iii. The Autonomy Factor

"The third factor instructs us to examine the degree to which an entity is autonomous from the state, while 'focusing on the entity's governing structure and the oversight and control exerted by a State's governor and legislature.'" *Patterson*, 915 F.3d at 955 (quoting *Maliandi*, 845 F.3d at 96). This factor asks whether an entity's autonomy is "constrained enough" by the State to be considered an arm of that state. *Maliandi*, 845 F.3d at 99.

The Third Circuit's analyses in *Kovats* and *Maliandi* are useful reference points for the Court's autonomy assessment here. The *Maliandi* court concluded that MSU was not autonomous, using Rutgers and the University of Iowa as "benchmarks" for its evaluation. *Id.* at 96–99. In reaching its conclusion, *Maliandi* court emphasized the Governor's power to appoint all members of MSU's Board of Trustees and collectively bargain on behalf of MSU's employees. *Id.* at 97. The court also stressed that Montclair was "subject to significant reporting requirements and rules for internal governance." *Id.* at 98 (noting MSU was required to "hire an independent auditor and prepare a publicly available audit, prepare an annual report on their general operations, prepare a long-range facilities plan that includes a description of the source of non-state funds, and present the Governor and legislature with an annual budget report."). The State also constrained state colleges like Montclair "by subjecting them to the Administrative Procedure Act, the State College Contracts Law, and the civil service laws." *Id.* (citations omitted). Importantly, the *Maliandi* court recognized MSU retained some autonomy but was "constrained enough" to "tip this factor in favor of immunity." *Id.* at 99.

In contrast, the Third Circuit deemed Rutgers "largely autonomous" in *Kovats*. 822 F.2d at 1311. The court focused its autonomy analysis on Rutgers' "dual governing structures"—which "evolved from Rutgers' history as a privately chartered institution"—and the school's financial independence. *Id.* Rutgers was governed by two boards, the Board of Governors and the Board of Trustees, who enjoyed a "high degree of self-government" over the school. *Id.* Roughly half of the Board of Governors were appointed by the state Governor with advice and consent of the state senate, and less than half of Rutgers' Board of Trustees were appointed by the Governor. *Id.* The court found "both boards may exercise their powers without recourse or reference to any department or agency of the state" subject only to two minimal state constraints: (1) compliance with state budget appropriations; and (2) compliance with state laws and regulations. *Id.* (citing N.J.S.A. § 18A:65-28). As to the first constraint, the fact that "individual spending decisions are not regulated beyond a requirements [*sic*] that the state be informed of those spending decisions" was indicative of Rutgers' autonomy. *Id.* Moreover, the court noted that "Rutgers is not required to manage its funds as public moneys, but rather is free to establish accounts and invest and withdraw funds as desired." *Id.* The school was also free from the broad "operational constraints" placed on most state agencies. *Id.* (noting Rutgers "need not comply with civil service, competitive bidding or administrative procedure requirements").

Rowan shares certain attributes with Rutgers and Montclair but is slightly more akin to Montclair. Rowan, unlike Rutgers, was originally established as a state institution and operated pursuant to the power afforded state colleges. N.J.S.A. § 18A:64M-2(h) (citing N.J.S.A. § 18A:64-1 *et seq*. and N.J.S.A. § 18A:3B-1 *et seq*.); Pl. Remand Motion 10. And as with Montclair, "[t]he Governor looms large" in Rowan's affairs. *Maliandi*, 845 F.3d at 97. All members of Rowan's Board of Trustees are appointed by the Governor with the advice and consent of the Senate.

N.J.S.A. § 18A:64M-7(a); *cf. Febres*, 445 F.3d at 231 ("Gubernatorial appointment of board members typically weighs only 'slightly' in favor of immunity."). In addition, the Restructuring Act provides that the Governor will continue to serve as the "public employer" for Rowan employees and engage in collective bargaining on their behalf, as is the case for state college employees. N.J.S.A. § 18A:64M-19(c) (incorporating N.J.S.A. § 18A:64-21.1).

Further, Rowan's Board is required to make recommendations to the Governor and Legislature regarding the University's facilities and services needs "as an educational instrumentality of the State[,]" N.J.S.A. § 18A:64M-15, and present an annual budget report to the Governor and Legislature, N.J.S.A. § 18A:64M-9(d). The Restructuring Act empowers the Secretary of Higher Education "to visit the university to examine into its manner of conducting its affairs and to enforce an observance of its laws and regulations and the laws of the State[,]" N.J.S.A. § 18A:64M-22.[12] Rowan is also required to prepare a publicly available annual audit and submit a long-range facilities plan to the State. N.J.S.A. §§ 18A:3B-6(l), -39(a).

Moreover, Rowan remains subject to the Administrative Procedure Act, N.J.S.A. § 18A:3B-6(f), state competitive bidding requirements, N.J.S.A. § 18A:64M-9(v), and state civil services laws, Miller Decl. Ex. A 7–8, all of which demonstrate continued state control over the University. *See Nannay*, 101 F. Supp. 2d at 284 (citing Rowan's adherence to the "New Jersey Administrative Procedure Act, New Jersey civil service rules, and State competitive bidding requirements" as evidence that the State retains "significant control" over the school); *cf. Kovats*, 822 F.2d at 1311–12 (emphasizing that Rutgers' "boards are not subject to the operational

---

[12] Defendant urges the Court to discount these considerations because Rutgers is subject to the same state oversight and statutory requirements per N.J.S.A. §§ 18A:65-25(b), -34 and was nonetheless found to be autonomous. Def. Opp. Mem. 26. The Court notes that each *Fitchik* inquiry is particular to the entity at issue, and, while not dispositive, these statutory requirements are undoubtedly relevant to the question of Rowan's autonomy. Indeed, the *Maliandi* court explicitly considered in these same statutory requirements and concluded that the autonomy factor weighed in favor of MSU's alter ego status. *Maliandi*, 845 F.3d at 98.

constraints placed on most other state agencies. For example, they need not comply with civil service, competitive bidding or administrative procedure requirements.").

Yet there are indicia of Rowan's autonomy from the State. Like Rutgers, powers granted to Rowan's Board under the Restructuring Act may be exercised "without recourse or reference to any department or agency of the State" subject to specific exceptions. N.J.S.A. § 18A:64M-12. As discussed *supra*, Rowan can freely spend and invest the money in its accounts without state interference. N.J.S.A. § 18A:64M-9(e), (f), (w). Rowan can also sue and be sued in its own name and own property. N.J.S.A. § 18A:64M-9(q), (y). And though appointed by the Governor, Rowan's Board members are removable only for cause, N.J.S.A. § 18A:64M-7(a), "according them considerable decisional independence once appointed[,]" *Maliandi*, 845 F.3d at 98.

Further, the Restructuring Act makes clear that the New Jersey Legislature intended Rowan to have "a high degree of self-government." N.J.S.A. § 18A:64M-5. As Defendant stresses, the Act emphasizes that "the university shall be independent of any supervision or control of the Department of State … and the allocation shall not in any way affect the principles of institutional autonomy established by that act …." N.J.S.A. § 18A:64M-30. This is relevant but not dispositive, however, as virtually the same language also applies to New Jersey state colleges, including MSU. *Compare* N.J.S.A. § 18A:64M-30 *and* N.J.S.A. § 18A:3B-27; *see Maliandi*, 845 F.3d at 98–99 (recognizing that "the New Jersey legislature has on many occasions declared its intention for state colleges to have 'institutional autonomy'" but nonetheless concluding MSU was not autonomous (citing N.J.S.A. § 18A:3B-27)).

On balance, the Court finds that Rowan's autonomy is roughly comparable to that of MSU in *Maliandi*. Though able to exercise significant autonomy, Rowan is constrained enough by state oversight and regulations to push the autonomy factor slightly in Plaintiff's favor.

###### iv.  Balancing the *Fitchik* Factors

"After identifying the direction in which each factor points, [courts] balance them to determine whether an entity amounts to an arm of the State." *Maliandi*, 845 F.3d at 84. In the instant matter, the question of whether Rowan constitutes an arm of the state for diversity purposes is a very close call. The funding factor weighs decisively against Rowan's claim of alter ego status, while the autonomy factor slightly favors a finding that the University is an arm of the state. The status under state law factor is inconclusive. As only one of the three *Fitchik* factors falls in Defendant's favor, the Court concludes that Defendant has failed to show that Rowan is not an arm of the state.

As noted above, Defendant bears the burden of proof to show that diversity jurisdiction is proper. *Samuel-Bassett*, 357 F.3d at 396. Ultimately, it is the burden of proof coupled with the Third Circuit's command that "all doubts should be resolved in favor of remand" that tips the balance towards remand here. *Abels*, 770 F.2d at 29. In the instant matter, Defendant has failed to show that Rowan is citizen of New Jersey for diversity purposes. Because Defendant has not established that diversity of citizenship exists between the parties in this case, the Court lacks subject matter jurisdiction to decide the matter. *See* 28 U.S.C. § 1332(a).

## IV.  Conclusion

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**. This case shall be remanded to the New Jersey Superior Court, Gloucester County, Civil Division. An order shall issue.


Date: 10/25/2021                                    /s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge